Filed 7/21/26  In re D.B. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re D.B., a Person Coming Under the Juvenile Court Law. | B341148 (Los Angeles County  Super. Ct. No. 19CCJP06290) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff,<br><br>v.<br><br>V.B.,<br><br>Defendant and Appellant;<br><br>D.C.,<br><br>Respondent. | |

APPEAL from order of the Superior Court of the County of Los Angeles, Philip L. Soto, Judge. Affirmed.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Joseph D. Mackenzie, under appointment by the Court of Appeal, for Respondent.

_____

V.B. (father) appeals from the juvenile court's exit order denying him joint legal custody over his son, D.B. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

D.B. (born 2011) came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) when father was detained for suspected child abuse. On January 2, 2024, D.B. misbehaved during a miniature golf game. After D.B. ignored verbal admonishments and slammed the car door, father grabbed D.B. by the back of his head and struck him twice with a belt. When D.B. fell to the ground in pain, father struck him again. The altercation left red marks on D.B.'s leg and arm, and D.B. had a panic attack. D.B. was removed from father and placed in mother's home.

Father admitted he hit D.B. with a belt three times on January 2, 2024, and on at least three prior occasions. He

---

[1] We do not recite the entire factual and procedural background, as the parties are familiar with the facts of the case and its history. (Cal. Stds. Jud. Admin., § 8.1; *People v. Garcia* (2002) 97 Cal.App.4th 847, 851.) Undesignated statutory references in this opinion are to the Family Code.

pleaded no contest to misdemeanor cruel or inhuman corporal punishment causing injury to a child. (Pen. Code, § 273d, subd. (a).) The criminal court entered a three-year protective order with no-contact and stay-away provisions,[2] and it sentenced father to five days in jail with credit for time served and 10 days of community labor. The criminal court ordered father to enroll in a parenting skills program within 30 days and successfully complete a 52-week program.

Mother and father reported that they shared legal custody of D.B. At the time of the arrest, D.B. lived with father and was with mother on alternating weekends. Mother reported, however, that she had been considering action in the family court to obtain full custody. After father moved to Oxnard with D.B., father did not tell her where D.B. was enrolled in school, and he would not list her as one of the child's emergency contacts. Father also denied her weekend visits with D.B. on several occasions.

DCFS filed a dependency petition alleging physical abuse and failure to protect based on the January 2, 2024, incident, father's arrest, and past occasions when father struck D.B. with a belt. In February 2024, the juvenile court sustained the petition as amended. It found the allegations true, as well as an allegation that father's "inappropriate discipline" endangered D.B.'s physical health, safety, and well-being. D.B. was declared a dependent. Father was ordered to complete a 52-week parenting skills program, participate in individual counseling to

---

[2] Though the record is unclear, the parties assert the criminal court either terminated or modified the protective order in April 2024, allowing father to have visitation.

address case issues, anger management, parenting skills and child expectations, and to comply with all criminal court orders.

DCFS provided father with referrals to free and low-cost parenting programs and counseling in January, April, and June 2024. By late July 2024, however, he had not provided DCFS with documentation showing his enrollment in these services. Meanwhile, DCFS reported that D.B. enjoyed living with mother, was regularly attending school and receiving appropriate healthcare, and that mother disciplined him by taking his electronics away.

The juvenile court conducted a six-month review hearing in August 2024. Legal custody of D.B. was the primary contested issue at the hearing. Mother's counsel argued that this was a domestic violence case, father had barely begun to address the problem, and issues of power and control made it appropriate for her to have sole legal and physical custody. Father's counsel submitted on DCFS's recommendation that mother have sole physical custody, argued the case did not involve domestic violence, and asked the court to follow DCFS's recommendation of joint legal custody. The court asked D.B.'s counsel about her "feeling" on mother's domestic violence argument, noting that "if it's strong enough," the court could order sole physical and legal custody. D.B.'s counsel declined to take a position on the issue.

The court denied father's request, stating: "Even though we may not have found [domestic violence] to be true in the case, it is evident that this is a domestic violence situation, and . . . the Family Code makes it clear that the custodial parent should have . . . primary residence and sole legal custody as well as physical custody." The court awarded mother sole physical and legal custody of D.B. and terminated its jurisdiction. Father's

4

counsel then argued there were no allegations of domestic violence, only physical abuse and inappropriate discipline, and no legal basis to give mother sole legal custody.

Father appeals from the custody order, challenging only the court's denial of joint legal custody.

## DISCUSSION

When the juvenile court terminates its jurisdiction over a dependent child, it may issue an order determining custody of the child. (Welf. & Inst. Code, § 362.4, subd. (a).) In doing so, the focus and primary consideration must always be the child's best interests. (*In re N.M.* (2023) 88 Cal.App.5th 1090, 1094 (*N.M.*).) The court need not give a specific statement of reasons when making a custody order. (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 713.) We review a custody order pursuant to section 362.4 for abuse of discretion and will not disturb it unless the determination was arbitrary, capricious, or patently absurd. (*N.M.*, *supra*, 88 Cal.App.5th at p. 1094.)

On appeal, father contends the juvenile court applied Family Code section 3044's[3] presumption against awarding sole or joint custody of a child to perpetrators of domestic violence. He argues the court misapplied the law because the presumption

---

[3] Subdivision (a) of section 3044 provides: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child, or against the child . . . there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Sections 3011 and 3020. This presumption may only be rebutted by a preponderance of the evidence."

5

does not apply in dependency cases, citing *In re C.M.* (2019) 38 Cal.App.5th 101, 108 (*C.M.*).[4]

Preliminarily, we observe that father did not bring to the juvenile court's attention his assertion that the section 3044 presumption did not apply in dependency proceedings. Father has forfeited his argument on appeal. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 222 [a party may not assert theories on appeal which were not raised in the trial court].)

Even if not forfeited, father's argument is unpersuasive. It is not clear that the juvenile court applied the section 3044 presumption to the exclusion of all other relevant considerations. The court did not specify a particular section of the Family Code or make findings under section 3044. Though the court acknowledged that a custodial parent "should have" legal and physical custody when there is proof of domestic violence in a case governed by the Family Code, its comments did not indicate an abdication of the court's duty to consider the totality of the circumstances and D.B.'s best interests. (*N.M., supra,* 88 Cal.App.5th at p. 1094.)

To the extent the juvenile court found guidance in section 3044, any error in its doing so was harmless. When father moved D.B. to Oxnard, he did not tell mother where D.B. went to school and withheld the child from weekend visits,

---

[4]     The *C.M.* court affirmed an order granting joint legal custody and rejected the father's argument that the juvenile court erred by *not* applying the section 3044 presumption. The court reasoned that dependency proceedings were not among those to which the presumption applied, and father made no legal argument why the court should depart from precedent holding that the Family Code is inapplicable in dependency cases unless expressly stated. (*C.M., supra,* 38 Cal.App.5th at pp. 109–110.)

6

indicating an inability to coparent successfully.  Father admitted striking D.B. with a belt on at least four occasions, and the most recent incident resulted in injury to D.B., a criminal conviction, and father's incarceration.  Both the criminal and juvenile courts ordered father to complete a year-long parenting skills program, and the juvenile court ordered individual counseling.  By the review hearing, however, father had completed only four parenting classes and received no counseling.  His near-total failure to comply with the court orders prevented him from gaining parenting skills and emotional insight that both courts deemed necessary.  Substantial evidence supported the juvenile court's implied finding that it would be detrimental to D.B.'s best interests to give father joint legal custody, particularly as D.B. was doing well in mother's care.  The court did not abuse its discretion.

## DISPOSITION

The juvenile court's custody order is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MORI, Acting P. J.

We concur:

TAMZARIAN, J.

COGLIATI, J. **

---

**      Judge of the Santa Cruz County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.